

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| **ROGER BENSON,** | ) **Docket No. 2021-08-0148** |
| **Employee,** | ) |
| **v.** | ) |
| **JONES BROS. CONTRACTORS LLC,** | ) |
| | ) **State File No. 35695-2020** |
| **Employer,** | ) |
| **And** | ) |
| **TRAVELERS INDEMNITY CO.,** | ) |
| **Carrier.** | ) **Judge Deana C. Seymour** |

## EXPEDITED HEARING ORDER
### *(Decision on the Record)*

Roger Benson has not worked since he allegedly sustained physical and mental injuries while working for Jones Brothers. Jones Brothers paid temporary disability benefits until Mr. Benson reached maximum medical improvement for his physical injuries. Mr. Benson now seeks additional temporary disability benefits while treating for his mental injuries. After an Expedited Hearing on the record, the Court holds Mr. Benson has not reached maximum medical improvement for his mental injuries and is entitled to the requested benefits.

## History of Claim

On May 18, 2020, a semi-truck struck a machine Mr. Benson was operating for Jones Brothers. He reported the truck "swiped the machine as well as [his] body and threw [him] . . . approximately eight (8) feet where [he] landed on the other side of the machine." Mr. Benson was evaluated at a local emergency room and discharged after x-rays showed no acute injuries.

The next day, Mr. Benson went to an urgent care clinic for back pain, emotional stress, and anxiety. Three days later, he returned to the urgent care clinic and was referred to a therapist and neurosurgeon.

Mr. Benson received psychotherapy and psychiatric medication management for his mental injuries from several mental health providers.[1] His therapists diagnosed post-traumatic stress disorder and anxiety.

During that time, he also treated for his physical injuries. After receiving orthopedic treatment for a low-back and neck strain, and a severe left-arm bruise, Mr. Benson ultimately saw neurosurgeon Dr. John Brophy. Dr. Brophy noted Mr. Benson had a history of preexisting chronic back pain but wrote that he was doing relatively well until the May 18 accident. He diagnosed cervical/trapezius myofascial pain and chronic back pain associated with mild lumbar spondylosis. Dr. Brophy cleared Mr. Benson to return to full-duty work and placed him at maximum medical improvement on November 9, without permanent impairment.

After his release, Mr. Benson continued to treat for his mental injuries. In March 2021, he was evaluated by psychiatrist Dr. Melvin Goldin, whom he selected from a panel. Mr. Benson complained of anxiety, flashbacks to this incident and to a childhood trauma, social withdrawal, nightmares, and fear of driving. According to Dr. Goldin, Mr. Benson displayed "gross fearfulness of something else bad happening, believing that he barely narrowly missed death in this incident."

Dr. Goldin diagnosed Mr. Benson with chronic post-traumatic stress disorder and alcohol abuse. In discussing his assessment of post-traumatic stress disorder, Dr. Goldin stated that childhood traumas and alcohol abuse may be contributing factors, but because Mr. Benson was functioning adequately before the work incident, they were not the cause of his current condition. Dr. Golden recommended continued psychotherapy and changed Mr. Benson's medications. In an April 9 letter, Dr. Goldin advised the nurse case manager that Mr. Benson would be unable to return to his job.

Dr. Goldin continues to treat Mr. Benson and kept him off work from April 9 to May 12, 2021. In response to a letter from Mr. Benson's attorney, Dr. Goldin advised that Mr. Benson was "unable to return to driving a big truck effective from date of injury 5/8/2020 [sic] through the present 11/24/2021." He noted that his work status would be reassessed at each visit.

Mr. Benson sought temporary disability benefits from December 30, 2020, to November 24, 2021, totaling $20,984.56.[2] He also claimed a $7,143.68 underpayment of temporary disability benefits from May 19 to December 29, 2020, based on an incorrect compensation rate. Mr. Benson urged that his mental injuries primarily arose from the

---

[1] It is unclear whether this treatment was authorized under workers' compensation.
[2] Jones Brothers paid temporary disability benefits through December 29, 2020.

mental trauma he experienced on May 18, 2020, and not from his physical injuries. His attorney requested a fee of twenty percent of the temporary disability award.

Jones Brothers relied on Tennessee Code Annotated section 50-6-207(1)(E) (2021) in support of its position that Mr. Benson's entitlement to temporary disability benefits ended when he reached maximum medical improvement for his physical injuries on November 9, 2020.[3] It further relied on the Appeals Board opinion *Tolbert v. MPW Industries Services, Inc*., 2016 TN Wrk. Comp. App. Bd. LEXIS 1, at *6, 7 (Mar. 24, 2016). Jones Brothers also denied Mr. Benson's claim that an incorrect compensation rate was used to calculate temporary disability benefits paid between May 19 and December 29.

## Findings of Fact and Conclusions of Law

At an Expedited Hearing, Mr. Benson must show he is likely to prevail at a hearing on the merits that he is entitled to the requested temporary disability benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

The issue is whether Mr. Benson is entitled to temporary disability benefits after being released from care for his physical injuries but being kept off or restricted from work by his psychiatrist. Tennessee Code Annotated section 50-6-207(1)(E) provides that an employee "shall be conclusively presumed to be at maximum medical improvement when the treating physician ends all active medical treatment and the only care provided is for the treatment of pain or for a mental injury that arose primarily out of a *compensable physical injury*[.]" (Emphasis added).

The central focus when interpreting any statute is to "ascertain and give effect to the intention or purpose of the legislature as expressed in the statute." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007). Unless the language is ambiguous, the Court must derive legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *Id*.

Tennessee law defines "mental injury" as a "loss of mental faculties or a mental or behavioral disorder, arising primarily out of a compensable physical injury or an identifiable work-related event resulting in a sudden or unusual stimulus[.]" Tenn. Code Ann. § 50-6-102(17). Section 50-6-102(14)(B) provides that an injury arises primarily out

---

[3] Jones Brothers contended that this issue was decided in *McCaffery v. Cardinal Logistics*, 2015 TN Wrk. Comp. LEXIS 88 (Tenn. Ct. Wrk. Comp. Cl. June 25, 2015). The Court finds that opinion without binding authority in this case. Further, an Appeals Board decision in the same case, *McCaffery v. Cardinal Logistics*, 2015 TN Wrk. Comp. App. Bd. LEXIS 50 (Dec. 10, 2015), did not address the issues currently before this Court.

of and in the course and scope of employment if the employment contributes more than fifty percent in causing the injury. Using this definition as guidance, a mental injury only arises primarily out of a physical injury if the physical injury contributed more than fifty percent in causing the mental injury.

Considering this definition, attempting to fit this case within the parameters of Tennessee Code Annotated section 50-6-207(1)(E) is like trying to fit a square peg into a round hole. Here, Mr. Benson undeniably treated for multiple physical injuries for nearly six months. However, in terms of the injuries found to have primarily arisen out of his employment, he has since recovered and has been released from care with no restrictions or permanent impairment.

The Court finds that Mr. Benson began experiencing emotional stress just two days after the work incident. His mental injury did not develop over time while treating for his physical injuries but arose very close in time to his work incident.

Further, in discussing his diagnosis of post-traumatic stress disorder, Dr. Goldin specifically reported Mr. Benson suffered from anxiety, flashbacks, social withdrawal, nightmares, and fear of driving. According to Dr. Goldin, Mr. Benson displayed "gross fearfulness of something else bad happening, believing that he barely narrowly missed death in this incident." While Dr. Goldin stated that Mr. Benson's childhood traumas and alcohol abuse may be contributing factors to his condition, he determined they were not the cause of his condition because he was functioning adequately before the work incident. Dr. Goldin never mentioned Mr. Benson's physical injuries in this discussion.

For these reasons, Jones Brothers's reliance on *Tolbert* is misplaced. In *Tolbert*, the employee's treating physician released him at maximum medical improvement for his physical injuries and referred him to pain management. The employee requested continued temporary disability benefits after reaching maximum medical improvement for his physical injuries. The employer denied the benefits. Under those facts, the Appeals Board held the conclusive presumption of maximum medical improvement in section 50-6-206(1)(E) applied and that the employee was unlikely to prevail on her request for temporary disability benefits.

Unlike *Tolbert,* where the need for pain management arose from the physical injury, the Court holds that Mr. Benson's mental injury did not arise primarily out of his physical injuries. Thus, Tennessee Code Annotated section 50-6-207(1)(E) does not bar his entitlement to temporary disability benefits.

However, this holding does not end the Court's analysis. If the mental injury did not arise primarily out of his physical injuries, then to be compensable, it must arise primarily out of an "identifiable work-related event resulting in a sudden or unusual stimulus." Cases focusing on this category of mental injuries make clear that (1) the injury must stem from

4

an identifiable stressful, work-related event producing a sudden mental stimulus, and (2) the event must be unusual compared to the ordinary stress of the worker's job. *Ireton v. Horizon Mental Health Mgmt., LLC*, No. E2015-00296-SC-R3-WC, 2016 Tenn. LEXIS 3, at *28 (Tenn. Workers' Comp. Panel Jan. 19, 2016).

The Court has little difficulty finding that being struck from behind by an eighteen-wheeler truck at work qualifies as an identifiable stressful, work-related event producing a sudden mental stimulus. In addition, while road construction crews work in close proximity to trucks and other vehicles, the Court also deems the stress of being struck by one of those vehicles as "unusual compared to the ordinary stress of the worker's job." Thus, the Court holds that Mr. Benson is likely to prevail at a hearing on the merits of his mental injury claim.

Having so held, the Court looks to Tennessee Code Annotated section 50-6-207(1)(D) to determine Mr. Benson's date of maximum medical improvement. This section provides,

> An employee claiming a mental injury, as defined by § 50-6-102, shall be conclusively presumed to be at maximum medical improvement upon the earliest occurrence of the following: (i) At the time the treating psychiatrist concludes the employee has reached medical improvement; or . . . (iii) One hundred four (104) weeks after the date of injury in the case of mental injuries where there is no underlying physical injury.

The Court may have determined that Mr. Benson's mental injury did not arise primarily out of his physical injury, but he still sustained an underlying physical injury. So, only subpart (i) would apply to the circumstances of this case, and Dr. Goldin has not yet placed Mr. Benson at maximum medical improvement. Therefore, Tennessee Code Annotated section 50-6-207(1)(D) does not bar his entitlement to additional temporary disability benefits.

Turning to Mr. Benson's request for temporary total disability benefits, he must show (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). For temporary partial disability benefits, he must show that his treating physician returned him to work with restrictions that Jones Brothers either could not or would not accommodate. *See id.* at *8.

The parties stipulated that Mr. Benson received temporary disability benefits from May 19 to December 29, 2020. Having reviewed the benefit ledger and wage statement, the Court finds that benefits were paid at the agreed compensation rate of $446.48 during this period. Therefore, the Court finds that no underpayment of temporary disability

benefits is owed for this period.

From April 9 to May 12, 2021, Dr. Goldin took Mr. Benson completely off work for his mental injury due to his fearfulness around eighteen-wheelers. He considered whether Mr. Benson's childhood traumas or alcohol abuse caused his condition but determined they were not the cause because he was functioning adequately before the work incident. Thus, Mr. Benson would be entitled to four weeks and five days of temporary total disability benefits at the agreed compensation rate of $446.48, totaling $2,104.83.

Regarding the periods from December 30, 2020, to April 8, 2021, and from May 13 to November 24, 2021, Dr. Goldin responded to a letter from Mr. Benson's attorney stating he was "unable to return to driving a big truck effective from date of injury 5/8/2020 [sic] through the present 11/24/2021." Jones Brothers did not introduce any proof that it accommodated this restriction. Moreover, while medical records suggest Jones Brothers terminated Mr. Benson in June 2020, no proof showed that his termination was precipitated by misconduct. Therefore, Mr. Benson would also be entitled to forty-two weeks and two days of temporary partial benefits, totaling $18,879.73.

**IT IS ORDERED** as follows:

1. The Court grants Mr. Benson's request for additional temporary disability benefits.

2. Jones Brothers shall pay Mr. Benson a lump sum of $20,978.56, representing $2,104.83 in temporary disability benefits from April 9 to May 12, 2021, and $18,879.73 in temporary partial disability benefits for December 30, 2020, through April 8, 2021, and between May 13 and November 24, 2021.

3. Counsel for Mr. Benson is granted an attorney's fee of $4,195.71, equating to twenty percent of his lump sum award for temporary disability benefits, payable from Mr. Benson's temporary disability award.

4. This case is set for a **Status Conference** on **April 4, 2022**, at **8:30 a.m. Central Time**. The parties must call (866) 943-0014 to participate. Failure to appear might result in a determination of the issues without the party's participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For

questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED February 22, 2022.**

_____
**DEANA C. SEYMOUR, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

The Court reviewed the entire case file in reaching its decision. Specifically, the Court reviewed the following documents:

1. Petition for Benefit Determination with attachments
2. Dispute Certification Notice
3. Notice of Appearance
4. Request for Expedited Hearing, along Mr. Benson's affidavit
5. Joint Motion to Try Expedited Hearing on the Record
6. Employer/Carrier's Motion to Continue Expedited Hearing
7. Joint Notice of Filing Medical Records, dated September 27, 2021
8. Joint Stipulation
9. Order Granting Joint Motion to Try Expedited Hearing on the Record and Employer/Carrier's Motion to Continue Expedited Hearing and Docketing Notice for Decision on the Record
10. Employee's Notice of Filing - Dr. Goldin's Signed Response Confirming Work Status
11. Joint Notice of Filing Updated Medical Records
12. Employee's Expedited Hearing Brief
13. Employer/Carrier's Expedited Hearing Brief

**CERTIFICATE OF SERVICE**

I certify that a copy of this order was sent as indicated on February 22, 2022.

| Name | Certified Mail | U.S. Mail | Email | Service sent to: |
|---|---|---|---|---|
| Monica Rejaei, Employee's Attorney | | | X | mrejaei@nstlaw.com |
| Paul Nicks, Employer's Attorney | | | X | pnicks@travelers.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____
*[Signature of appellant or attorney for appellant]*